1  Robert J. Lynch, Esq.  (SBN 192287)
   McMAHON LYNCH LAW FIRM, INC.
2  Attorneys at Law
   1250 Corona Pointe Court, Suite 407
3  Corona, California 92879
   Telephone:   (951) 371-6868
4  Facsimile:    (951) 371-8787

5  Attorneys for MVC Enterprises, Inc. dba Moreno Valley
   Construction; & Jay Zachary Zuppardo; and Jay Anthony
6  Zuppardo

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11

12
   ARCH INSURANCE COMPANY a          CASE NO. **5:21-cv-01876-JWH-SP**
13 Missouri corporation,

14           Plaintiff,               SECOND COUNTER CLAIM BY
                                      JAY ANTHONY ZUPPARDO &
15 v.                                 JAY ZACHARY ZUPPARDO

16 M.V.C. ENTERPRISES, INC. dba
   MORENO VALLEY
17 CONSTRUCTION, a California
   Corporation; JAY ZACHARY
18 ZUPPARDO, a California resident;   Complaint Filed:  11/4/2021
   and JAY ANTHONY ZUPPARDO,
19 a California resident.             **Assigned to District Judge John W.**
                                      **Holcomb and Magistrate Judge**
20           Defendants.              **John D. Early**
   _____
21
   JAY ZACHARY ZUPPARDO; and
22 JAY ANTHONY ZUPPARDO,

23           Counter-Claimants

24 v.

25 ARCH INSURANCE COMPANY
   a Missouri corporation.
26
             Counter-Defendant
27
   _____
28    **COUNTER-CLAIMANTS,** Jay Zachary Zuppardo and Jay Anthony

───────────────────────────────────────

Zuppardo (collectively, "Zuppardos") hereby allege as follows:

**JURISDICTION AND VENUE**

1.      This court has jurisdiction over this civil action under 28 USC §1332, in that the controversy exceeds, exclusive of costs and interest, $75,000.00, and 28 USC §1367 in that the claim is a compulsory counter claim arising out of the same transaction giving rise to Plaintiff's complaint.

2.      Venue is appropriate in that it has already been established on the Complaint and the acts complained of herein by Zuppardos occurred within Riverside County.

**THE PARTIES**

3.      The Zuppardos are Jay Anthony and Jay Zachary Zuppardo, father and son owners of Defendant MVC Enterprises, Inc., ("MVC") a California general contracting company that at all relevant times herein was a licensed contractor.

4.      Arch Insurance Company, A Missouri corporation (hereinafter "Arch" or "Plaintiff") was a duly licensed and admitted surety insurer in the State of California and issued contract surety bonds, including performance and payment bonds.

**GENERAL ALLEGATIONS**

5.      Arch issued various performance and payment bonds to MVC to enable MVC to conduct business with public entities, such as school districts, who required such bonds as a condition to awarding bids.  The bonds were issued pursuant to an indemnity agreement between Plaintiff and the Zuppardos dated September 30, 2019 ("Agreement"). This is the same Agreement upon which Plaintiff bases it's complaint and is the operative written agreement in this matter. One of the public entities involved was Antelope Valley Community College District ("AVCC').

6.      At the end of 2020 and beginning of 2021, MVC was working on three (3) different large projects for AVCC:  Student Services, Discovery Center and Marauder.  Each of the three projects was a multi-million-dollar grading and

concrete job.  AVCC started threatening defaults on the three projects on March 18, 2021.  Arch was copied on the default threats and was advised that AVCC had not been paying MVC for the work that MVC performed.  MVC and Arch spoke often about the AVCC projects during the Spring and Summer of 2021 and MVC made it very clear to Arch that MVC had to be paid by AVCC in order for MVC to maintain enough liquid capital to keep all of its projects going.  Arch participated in the conversations between AVCC and MVC in which MVC sought payment from AVCC.  Susan Neff, of Arch Insurance, was on the Zoom conferences between MVC and AVCC, along with AVCC's counsel, Sherman Wong.  During video conferences of the Spring and Summer of 2021, Mr. Wong threatened both Arch and MVC that AVCC expected continued work on AVCC projects despite the status of payment.  As a result, Arch was aware of the rather large outstanding balance owed MVC on the projects Arch bonded.  During phone calls with the Zuppardos, Ms. Neff and several superiors at Arch, Arch pushed MVC to keep working on its bonded projects, which meant spending more capital, to avoid breaches of the agreements with AVCC and pressured MVC into continuing work on the projects.  Ms. Neff pointed out to MVC that it would be best if MVC continued to work the projects to prevent a breach with AVCC.  MVC pointed out that that course of action would basically require them to fund the construction of the AVCC projects, which was something that they could not do.  MVC had other Arch-bonded projects as well and was relying on monies coming in from the other projects to fund ongoing operations, as well as loans from the Zuppardos and third-parties.  After telling MVC to keep working the AVCC project to prevent a breach with AVCC, Arch benefitted from MVC's continued outlay of capital to the extent that Arch was thus not required to pay claims against the bonded projects while MVC kept paying vendors and subcontractors without itself being paid by AVCC.

7.     On or about July 15-16, 2021, Susan Neff, of Arch Insurance, Jay Zuppardo and Zach Zuppardo participated in a telephone conference during which the claims

of AVCC were again addressed.  During the conference, the Zuppardos inquired about financing to keep MVC afloat and protect both MVC and Arch.

8.     On August 5, 2021, MVC sent correspondence to Arch, requesting financial assistance, based on the hardships that AVCC had caused. At that point, the funds available from loans were drying up, but MVC was still being paid by other projects.  Arch advised MVC that it was considering financial assistance to MVC.

9.     At the same time that AVCC was threatening defaults and refusing to pay for work that was not in dispute, MVC was also dealing with trying to keep employees on site and working. As a result of COVID-19 related hardships, many of MVC's personnel would not show up to work as reliably as pre-pandemic times. As such, the problems in getting personnel and equipment on site were exacerbated by the pandemic and Arch was made aware of this.

10.     As of September 7, 2021, AVCC had also damaged MVC to the tune of $5,793,835.71, based solely on one project for AVCC, known as Marauder, by failing and refusing to pay for the work of MVC at that project.  Arch was aware of the dispute since the Spring of 2021 and aware of the lack of liquid capital related to AVCC's failure to pay.  This was merely one of three (3) similarly sized projects that MVC was working on for AVCC.

11.     MVC had requested financial assistance from Arch, but never got a solid response from them, except that MVC should do its best to continue working its projects while Arch considered MVC's requests, and that Arch was still considering the request.  From August of 2021 through October 1, 2021, MVC provided additional financial information to Arch.  MVC advised Arch that time was of the essence in making a determination as to whether or not Arch was going to provide financial assistance because of the pending problems covering payroll based on AVCC's failure to pay.  Retained counsel for MVC, John Darling, was also in communication with counsel for Arch, Chris Bunge, on the issue.

12.     On September 28, 2021, MVC sent another formal request to Arch for

4

financial assistance. Arch's response was that they were still considering the request.

13.    Arch put a freeze-payment on all payments by all public entities to MVC on September 30, 2021, while they were still representing to MVC that MVC should continue working on the bonded projects and that they were still considering financial assistance. As a result, the Arch-bonded projects that had been paying MVC stopped doing so. Arch's correspondence of September 30, 2021 had the effect of preventing MVC from collecting on funds due to it. These were funds that could have been used toward the bonded projects and could have been used to keep suppliers and providers up to date.

14.    On information and belief, Arch's actions prevented the payment of somewhere between $750,000 and $1.5 million. At the same time, Arch dragged their feet in dealing with the processing of the claims by AVCC. The Marauder project received a denial, but claims on two separate projects, Discovery Lab and Student Services, went unaddressed. Had these claims been addressed, it is believed that AVCC would have been more forthcoming in payments owed.

15.    MVC and the Zuppardos learned of Arch's September 30, 2021 letter on or about October 4, 2021, when the project manager for AVCC sent correspondence to the Zuppardos.

16.    In the meantime, Arch was still representing to MVC and the Zuppardos that they were considering requests for financial assistance. On October 1, 2021, MVC asked for funds to help cover payroll to keep workers on site. In an email from the same date, Susan Neff of Arch indicated that Arch had not yet completed its assessment of the request for financial assistance, which had the expected effect of keeping MVC and the Zuppardos working and covering payments while Arch already knew that no assistance would be provided.

17.    Had Arch been forthright in their dealings with MVC and either denied a request for financial assistance, or accepted the same, MVC would not be in its

5

current position.  Had Arch outright denied the request, instead of implying that it was a possibility, MVC and the Zuppardos would have stopped borrowing to keep spending money on projects.  MVC and the Zuppardos would have preferred that Arch agreed to the alternative.  But either way, Arch's actions in stringing MVC along while at the same time benefitting from the fact that MVC was acting to prevent defaults on projects, and at the same time undercutting MVC's ability to collect from other projects all amounted to detriment to MVC.

18.     As the proximate result of Arch's actions, MVC and the Zuppardos borrowed money to cover costs that they would not have covered had Arch been forthright and upfront in its determination to not provide financial assistance.

**FIRST CAUSE OF ACTION**

**(Breach of the Covenant of Good Faith and Fair Dealing)**

19.     The Zuppardos incorporate by reference Paragraphs 1 through 18 as though set forth fully herein.

20.     Arch violated its duty to act fairly and in good faith during the performance of the Agreement between Arch, MVC and the Zuppardos.

21.     The Zuppardos and Arch entered into the Agreement by which the Zuppardos agreed to guarantee the surety agreement between Arch and MVC. This is the same indemnity agreement identified in Plaintiff's Complaint and dated September 30, 2019.

22.     The Zuppardos did all, or essentially all, of the significant things that they were required to do before the obligations of Arch to deal fairly with the Zuppardos attached.

23.     Any other conditions for performance on the part of the Zuppardos, if any there were, had either occurred or were excused by Arch's acts or failures to act.

24.     As a result of the conduct of Arch described herein, the Zuppardos were prevented from receiving the benefits they were due under the contract with Arch. For example, the Zuppardos were precluded from receiving the benefit from Arch

6

of Arch making timely investigations into the claims of AVCC and other owners as Arch dragged its feet in assessing claims. The Zuppardos were denied the benefits of not being exposed to bond claims while Arch dragged its feet in determining whether or not to provide financial assistance. The Zuppardos loaned money to MVC, to their detriment, with the knowledge and encouragement of Arch, as bond claims mounted and Arch continued to lead them on that financial assistance might be forthcoming.

25.     By taking the actions complained of herein, Arch did not act fairly and in good faith.

26.     As a result, the Zuppardos were harmed by Arch's conduct in an amount equal to that which they spent in the outlay of capital to keep projects running for Arch's benefit. This is an amount that will be shown at the time of trial, but far exceeds any jurisdictional requirement of federal jurisdiction were it determined that pendent jurisdiction does not apply to this claim.

**PRAYER**

WHEREFORE, Counter-Claimants request the following:

1.   That Counter-Claimants be awarded economic damages in an amount to be determined at the time of trial;

2.   Prejudgment Interest;

3.   That Counter-Claimants be awarded costs of suit incurred, including applicable attorneys fees per contract; and

4.   For such other relief as the court deems proper.

Dated:  July 25, 2022                    MCMAHON LYNCH LAW FIRM, INC.


                                         */s/ Robert J. Lynch*

                                         Robert J. Lynch, counsel for Counter Claimants

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**      )

                        )   **ss.**

**COUNTY OF RIVERSIDE**      )

I am employed in the County of Riverside, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is 1250 Corona Pointe Court, Suite 407, Corona, California 92879.

On July 25, 2022, I served the following documents described as:

SECOND AMENDED COUNTER CLAIM BY JAY ANTHONY ZUPPARDO & JAY ZACHARY ZUPPARDO
.

on the interested parties in this action by personally delivering a true copy thereof to a representative of each of the law firm(s) listed in the following mailing list:

         Christopher M. Bunge, Esq. (SBN 258780)
         cbunge@watttieder.com
         WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
         4 Park Plaza, Suite 1000
         Irvine, California 92614
         Telephone: 949-852-6700

**XX**     By electronic service both through the ECF system and via e-mail from Outlook 2019 to e-mail addresses that I know to be associated with each counsel after having received communications from them at said addresses as listed immediately above.

☒     **FEDERAL:**  I declare that I am a member of the Bar of this Court.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on July 25, 2022, at Corona, California.

                                 */s/ Robert J. Lynch*

                                 Robert J. Lynch